May it please the court. Good morning. My name is Roger Diamond. I'm the attorney for the defendant's felon in this matter I'd like to reserve about five minutes for rebuttal Major issues in our appeal. This is the obscenity case Question arises as to the fairness of the excuse me. What did you say? This is the case where Judge Kaczynski was the trial judge in the first case, which is not before. What's the significance of that to this case? He, Judge Kaczynski, had determined that Mr. Isaacs did qualify as an expert. But it all started over. We're looking at Judge King now. So let's go with Judge King's decisions. He recused himself for one thing finally, and that suggested that we shouldn't be relying on what he told us. That's fine. The issue that I'd like to discuss now is whether my client was deprived of effective assistance of counsel and the right to have his attorney argue properly before the jury when the jury asked a question for clarification. The court had previously instructed the jury on the definition of purience as requiring three things, that the appeal to a pure interest be to a morbid, degrading, and unhealthy interest in sex. That instruction had been given in the second trial, which ended in a mistrial. It was given at the beginning of the third trial and was given at the end of the third trial. When the jury had the question, Judge King proposed to change the instruction because Judge King felt that he had either made a mistake or was wrong in giving the original definition of appeal to a pure interest. That instruction had been presented by the government to the court for its consideration, and the defense agreed with that instruction. Nobody had argued against that instruction. So when the jury asked for clarification, the judge changed the instruction, feeling that the prior instruction was error. I argued in that court that the changing of the instruction, whether or not it was required in terms of the law, negatively impacted on the closing argument that I had delivered to the jury. So one of our arguments is precisely that, that the effectiveness of the argument was impaired. The government, in its brief, cites a Ninth Circuit case. Is that really the case? Can I ask you a question? Yes, Your Honor. Is that really the case? Is that really the case, though, counsel? Because it appears from your closing statement, when you look at the transcript, you quote the jury instruction defining pure interest as a morbid, degrading, and unhealthy interest. That was the instruction. That was based on the instruction. But a few lines later, you refer again to the definition, but this time you say morbid, degrading, or unhealthy interest when you're arguing to the jury. And so it appears, basically, that you gave the jury the later version of the instruction, or seemed to have argued that later version of the instruction. And so I'm trying to understand how that supports your argument that somehow the jury would no longer find you credible. I purported to read the exact instruction. Well, you did once, but then in Excerpt 327, no, 326, you said, so the question is, does an average person have a morbid, degrading, or unhealthy interest in sex? So it seems that, at least in your argument, you seem to either use the two phrasings interchangeably, or at least sowed the seeds of potential confusion by using and once and or once. The second time, I was not reading any instruction. I might have simply stated that, although I don't recall. Correct. And I'm not sure even if the reporter, if the court reporter took it down correctly. That's the transcript we have, and there's nothing before us requesting a change of the transcript to be more accurate. So that is what the transcript says. That's what we're left with. And I think that what Judge Mugia, or at least what I'm interested in, is how the, when you yourself were using both formulations, how the judge's instruction could have had a prejudicial effect. Because I told the jury I was reading the instruction, and I read it, and the jury needs to believe in the defense attorney's credibility. How does that affect your credibility? That was the instruction that you read, and the jury knew that. Is that not true? I don't know what they knew. Of course you know what they knew. That's why they came back with a question. They came back and said, your instruction, Judge, was and. Do you really mean and? That's what they said. So obviously the judge instructed them just as you said the judge instructed them. So how does that make you not credible when the judge changes his mind, let's say, on how to put it? I mean, your use of and and or is not just you used and and or. It's something that we legal folks unfortunately do all the time. You can find innumerable cases that say, well, in this statute and means or, or the judge once said or, but it really means and. I mean, we're always flipping back and forth, and we're too sloppy with it, I know. But you told the jury that's what the instruction was. It was what the instruction was. Was it not? The first time I read the instruction, the second time I was not purporting to. I'm not talking about that. You said the jury would find me not credible because there were other women. Isn't that the case? What you said they would finally not credible because of that. No, not just because of that. You're talking about the instruction now. But you said they'll find me not credible because I read that to them. Is that not true? Your Honor, context is important. I was also accused during closing argument of misstating an instruction with respect to the appeal where I allegedly said it's an appeal to the average person. And the government in his argument criticized me for allegedly misstating that portion of the instruction as to whether or not it was appropriate. If I could, let's just get back to this instruction because this seems to be important to your argument today. What happened then after the jury returned a question, you all conferred. The judge determined that the correct, based on what could be put together from the Ninth Circuit, previous instructions and all, that the correct instructions should have been in the disjunctive, not in the conjunctive. I think it looks from the record that you all agree. And then the question was, what do we do about it? What did the district court need to do about it? You suggested that the district court do nothing or leave the instruction the way it was, being and instead of or. The district judge, and it seems like that's the only option you gave him. The district judge said, well, I have to tell the jury what I think the law is now that I know what the law is. And so I'm going to do that. You didn't really offer any other alternatives. And so I'm just trying to figure out what do you think the judge should have done? The judge should have re-instructed the jury as to what the definition was. And I might point out that it's not. Well, he did. Well, no, he changed the definition. But, counsel, had the judge done what you're now saying, you would have appealed on the ground that the instruction was erroneous because or is correct under Ninth Circuit precedent. Well, that's not. So the judge was kind of between a rock and a hard place. Well, first of all, I don't concede that the judge was wrong in the first instruction because the cases that the judge relied upon were not direct appeals in obscenity cases tried in Federal courts. And I remind this honorable court that Justice Harlan, a number of times, beginning with the Roth and Alberts case, pointed out that there's a difference and should be a difference in obscenity law between state prosecution and Federal prosecution. That is why he voted to reverse the conviction in Roth and affirm in Alberts and also in Jacobellis v. Ohio and in Memoirs v. Massachusetts. Harlan kept pointing out the difference between the due process clause of the Fourteenth Amendment in terms of obscenity definition and the First Amendment in terms of whether we should have a national standard. And so it's not without doubt as to whether or not in a State conviction the definition should be more liberal towards the State's interest in banning pornography. But you have not, however, assigned error to either form of the instruction, specifically. As I understand it, your assignment of error is that the judge changed course. Yes. Not that the instruction was wrong. So as the case reaches us, based on the arguments you've made, we must take as a given that the instruction ultimately given to the jury was correct, because you have not suggested that it was error per se, only because it was different. We're saying that that's right, because in the McIver case, which I wanted to get to, the defendant lost that case because he didn't state as a special ground of objection that the re-instruction to the jury impaired closing argument. He only argued a different point. And this Court ruled that he didn't preserve the right issue for appeal because he didn't give as a ground for objection that the re-instruction to the jury on the definition of manufacturing in the marijuana case affected closing argument. I wanted to make sure that I was preserving the right issue for appeal. But that's the only issue you preserved for appeal with respect to that instruction. Right. Because, Your Honor, it's irrelevant whether the judge was correcting something that should have been correct or not. The question was impact on closing argument, because the McIver case failed, because the lawyer did not argue in the trial court the correct argument, which was that the problem with giving a change instruction or different instruction is the closing argument issue, not the question of whether the law is properly stated. I think we understand your position on that. You have about three minutes remaining, if you wanted to save some time for it, Your Honor. And I did want to mention another case. The government, in its brief, cites a Fifth Circuit case, Cantu, C-A-N-T-U. That's cited in the brief by the government. And in that Cantu case, they happen to refer to one of this Court's decisions in U.S. v. Gaskins, and I happen to have it right from your library across the hall here. The Gaskins case reversed, the three-judge panel reversed a conviction because of a re-instruction in violation of Rule 30 of the Federal Rules of Criminal Procedure, because the instruction was given after the jury heard argument regarding aiding and abetting, an instruction that had not been given before. There was no question about whether the instruction was correct or not, but the issue was whether or not by giving that instruction, albeit a correct instruction of the law, whether or not that impacted the closing argument. And so that's the issue we're presenting here, the impact on closing argument. We have to know as lawyers, trial lawyers, what the statute is. That's important to us. And I know earlier you asked, well, what was the harm? Closing argument, which, by the way, is a separate heading in my appeal, closing objections by the government and by the court. I was instructed what to say, what not to say. I couldn't draw inferences. I couldn't do anything, even though in an obscenity case the Supreme Court has ruled in Hamlin v. U.S. that all the government has to do in an obscenity case is give the movie to the jury and let the jury look at the movie. Well, we as lawyers in arguing obscenity cases to juries have to be able to talk about common sense, human condition, psychological things, all things that are common knowledge. This court, Judge King, kept stopping me every inch of the way by saying, well, that's not in the record. I could not even say, well, people who watch these kinds of movies feel more comfortable about themselves if they know that other people share their bizarre thoughts or something. That's like a common knowledge type thing. I tried to tell this jury that the movie was never intended to be shown to 12 strangers in a well-lit courtroom. That's not the way the movies are intended to be shown. The government stopped me. The court stopped me because they said, well, there's no evidence in the record. Well, the movie itself is the evidence. I couldn't do anything. So when I tell this Honorable Court that closing argument was destroyed by the court, not just because of the re-instruction over my objection on the specific ground that it impaired my closing argument, but this argument has to be viewed in the context of what happened throughout the closing argument. I was called to the sidebar and admonished, warned and admonished and threatened by the court that I can't say certain things and do certain things because if it wasn't technically in the record, I couldn't even mention it. Even though logic would allow me to do it, even though reasonable inference drawing, which lawyers engage in and which judges and everybody in common day-to-day living engage in, I couldn't do that. So you have to view this restriction in the context of the broader closing argument, which was totally undermined. Counsel, your time has expired. What can I say? Thank you so much. Thank you. We'll hear next from the government. Thank you. Good morning, Your Honor. I'm Mark Jeffrey Zeme on behalf of the government. With me at counsel table is Mike Grant, who is trial attorney in this matter. Defendant has shown no error, much less abusive discretion in the four rulings he challenges, nor has he demonstrated as he must that any of the purported errors were at all prejudicial to him. I want to focus almost entirely on the issue that defense counsel focused on, which is the jury instruction issue. And Judge Merguia was exactly correct that there's been no demonstration of prejudice here for several reasons. First of all, defense counsel simply didn't rely upon this disjunctive or this conjunctive reading during his argument. He never argued that the government must prove the interest in sex to be morbid, degrading, and unhealthy. There was no focus on that whatsoever. If that was the focus of the closing argument, that the government had failed to prove all three of these descriptive terminology, it might be a different issue. But that was never the focus of the argument. He simply stated twice, once per the original instruction, once per the later instruction, this terminology. And he was in no way making an argument that was grounded in these three distinct terms. He never tried to distinguish among them. He never tried to assign one but not the other two to the nature of the conduct in the videos. So there's just simply no prejudice because of that. Regarding the larger credibility issue, I think Judge Merguia was exactly correct that, again, defense counsel stated this twice two different ways. But even beyond that, if there was any credibility problem, it was defense counsel himself who was responsible for the credibility issue when he affirmatively misstated the law by saying the average person has a morbid, degrading, or unhealthy interest in sex. That is quite simply not the law. It's whether these videos were appealing to a morbid, degrading, or unhealthy interest in sex. What the average person's interest in sex is is completely immaterial to the insanity determination. So if there was any lack of credibility, it was self-imposed by misstating the law at which point the government objected and the judge correctly sustained that objection. Well, let me just talk about that instruction, though. Even though you've made some arguments regarding the credibility, it is a little disconcerting that the instructions that the two parties agreed to apparently were not the correct statement of the law with respect to purient interest as it was in the Kennedy case. It turns out after the jury had a question that the law should have been stated or instead of and with respect to the purient interest definition. Rule 30 does require that there be a statement of the law and instructions given that's accurate, I think. That's what Rule 30 says. And that wouldn't a defendant be disadvantaged when that doesn't happen? I would say that Judge Graber had this right. The court was between a rock and a hard place here in that the better choice, the better choice is to correct, to instruct correctly on the law rather than give a knowingly incorrect instruction that's only going to serve to confuse the jury and create a new issue for appeal down the line. So I think it's an abuse of discretion standard, first of all. That's the most important thing to recall here. So the judge certainly didn't abuse his discretion by correctly instructing the jury what the law is. But beyond that, the judge was actually correct, I would assert, in that between these two options, the judge chose the option which is far preferable. But at the very least, it certainly doesn't lead to an abuse of discretion in this case. Well, how do we know it didn't affect defendant's strategy in some way? I mean, maybe they thought it was in the conjunctive, so they didn't have to focus on it. I mean, I can't say definitively what a defendant would or would not have done. But I think the facts speak for themselves here, and there was just no discussion whatsoever of this issue. And there has to be some prejudice. And, again, there's no indication on the record whatsoever that defense strategy focused on this. Beyond that, this is not like three elements of an offense that they have to prove in the conjunctive or disjunctive. These are three descriptive terms that are meant to illuminate one word, which is one element of the offense. So if there was any impact on closing strategy, it certainly was not a material impact. Again, this was a 40 to 60-minute closing argument, wide-ranging, as the Court is well aware. To focus in on, you know, descriptive terminology, three terms that are roughly synonymous in all events, that are, again, simply meant to illuminate one term and one element of the offense. Would the district court have been acting within its discretion had it permitted a supplemental argument in light of the change of construction? I think it would have been, Your Honor. Did anybody ask? No, Your Honor. That was not asked. But it would have been within its discretion. These are classic trial management issues. And there's a wide discretion, traditionally, in all the cases the government cited in terms of what the court can choose to do in terms of instructing the jury. And so there is wide discretion here. And either of those approaches would have been correct in this case. But here, the only options, as the Court, as all three of you alluded to, the only options before the Court were either proceed by giving the jury what it believed to be an incorrect instruction on the law, or correct this non-material discrepancy and clarify the jury's questions. So I would suggest that the Court acted absolutely appropriately, but, again, well within the wide discretion afforded to it. I want to make one more point on this issue that defense counsel raised for the first time in his responsive brief, and that is he brings this kind of red herring straw man in about this due process ex post facto argument. This is not a fair notice ex post facto or due process situation. The defendant was prosecuted based on the obscenity law in place at the time of his conduct, and that obscenity law is still in place today. The Marks case he cited is talking about changes to the actual law, the substantive law, that occur between, before the offense conduct takes place. This case is not at all a due process or fair notice situation. This is a case of a change to the jury instruction that occurred during the course of trial, not a change to the actual legal standard that occurred prior to the offense conduct. So that is a complete red herring, and he's just completely misciting the Marks holding for that proposition. I'd like to turn now to the issue that defense closed on, which was the purported improper actions by the Court that interrupted his closing argument. And what's important to note here is that, first of all, the Court warned defense counsel, warned him prior to closing to stick to the facts that were on the record. And so he was, based on prior experience, the prior trial... Well, warned or not warned, there is a difference, isn't there, between referring to facts outside the record, such as, you know, my client was an Eagle Scout, or generic analogies to the world, you know, referring to other movies or something like that. Where does one draw the line? Absolutely, Your Honor. In this case, I think the Court did a very fair job drawing the line and was fair to both parties. There were a total of ten objections based on facts outside the record.  each objection by the Court. There was no indication of any kind of bias against defendant. I think the Court drew the line when defendant tried to bring in completely irrelevant facts that were never mentioned in trial, that weren't kind of general analysis or analogies, but actual specific factual assertions that there was no opportunity to rebut because the trial was over, except for the closing arguments. For example, discussing the Terry Schiavo case. There was nothing about the Terry Schiavo case in the record. There was no basis for the jury to know what this was about. But, you know, what if somebody were on trial now and the lawyer wanted to say, you know, it reminds me of what's going on in the Crimea right now. You know, is that something that is a fact that has to be in the record to be a closing argument when something is well known? Does it even matter if it's true? It's a little bit like something that isn't hearsay. Do you understand the point that I'm drawing? I'm not sure why that's a fact that has to be proved in the normal sense. Well, I would say first of all that it's not an abuse of discretion for the Court to rule in this fashion. It is an abuse of discretion standard. And the Court, again, was very balanced and fair in its rulings here. But I would say, with that example, the potential for confusion of the jury is very high. One of the main purposes of this rule, which is a rule that applies throughout, you know, our system, whether in an obscenity case or any other criminal prosecution, is that neither side can confuse the jury by referencing facts that are newly exposing, the jury is newly being exposed to. We have 12 jurors. They could have 12 different views of what the Crimea means or what's happening. Well, sure they could, but that's the whole point of argument, isn't it? I mean, what if, you know, in an obscenity case someone wanted to say, well, there's a whole range of nature, you know, literature goes over a whole range. It could range from Winnie the Pooh to Alice in Wonderland to something else. Is that objectionable because, you know, Winnie the Pooh is not in evidence? I mean, at some point it seems to me that there has to be some latitude to argue. I would say there was latitude here, Your Honor. The argument, again, was very lengthy. It was around 45 minutes to an hour. The total objections, it was, you know, 14 objections, 10 of which are sustained. We're talking about a few minutes of objectionable material. Earlier you said 10 objections of which 7 were sustained, and now we're up to 14 of which 10 are. There were 14 total objections. Of those 14, 10 were objections to facts not in the record. The other 4 were objections to other types of, you know, misstatements of the law and so forth. But the real focus of defense counsel is, I think, to the objections that focused on facts not in the record. And of those 10, 7 were sustained. And I would say, so first of all, it really had a de minimis impact on closing arguments. It was a very small portion of the entire argument, which was very wide-ranging, covered a very wide array of topics, many of which actually were theorizing about things that were not in the record directly. So there was wide latitude afforded here, I would say, Your Honor. It wasn't as if defense counsel was completely shut off from making his point to the jury. He made it again and again and again. His point was very clear. But at certain points he stepped over the line, talking about, you know, speculating about gay rights issues and couples living together out of wedlock and speculating about what certain religions, you know, what the penalties were under certain religious practices in different countries. And the potential, really, for jury confusion is quite high. And it's unfair to either party to allow the other party to start talking about things that there's no way to really rebut because they're factual assertions. They aren't inferences based on the record. They aren't argumentation. They're actual assertions saying, this is a fact that I know to be true, which there's no basis to test that. There's no basis to cross-examine that. There's no opportunity to present conflicting evidence. The trial at that stage is over. The presentation of evidence is over. So it's unfair to the government to allow factual assertions that just simply can't be tested in any way. And I'd say, Your Honor, that in the previous four days of trial, defense counsel had ample opportunity to bring these facts into the record. If they thought it was important for the jury to hear about some of these things, they could have brought in a witness or evidence or anything else that actually presented these factual comparisons to the jury. They chose not to do so. And to introduce that for the very first time, facts, not argument, not inferences, but actual facts is simply confusing to the jury and unfair to the government. And the court acted well within the wide discretion afforded to it on these matters in sustaining seven of those ten objections to the facts outside the record. Unless the court has additional questions on the other two points that didn't really come up so far, I'll yield my time. I don't believe we have any additional questions. Thank you. Thank you. You have used up all of your time. And so the case is submitted. We appreciate very much the arguments of both counsel. They've been very helpful. And the case is submitted. We are adjourned for this morning's session.
judges: Fernandez, Graber, Murguia